UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JARED SCHULTZ, JR.,                           CIV. NO. 12-2833(MJD/JSM)

      Petitioner,                           REPORT AND RECOMMENDATION

v.

BECKY DOOLEY, WARDEN,
MCF-MOOSE LAKE,

      Respondent.

This matter came before the undersigned on petitioner Jared Schultz Jr.'s Amended Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody ("Amended Petition") [Docket No. 3]. The State answered, asking that the Amended Petition be denied in its entirety as meritless. [Docket No. 6]. The matter was referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.

## I.  BACKGROUND

In April, 2007, petitioner Jared Schultz, Jr. pled guilty to one count of criminal sexual conduct after sexually penetrating an eleven year old girl. State v. Schultz, A10-44, 2010 WL 3220133 at *1 (Minn. Ct. App. Aug. 17, 2010) ("Schultz II").[1] At his sentencing hearing on July 16, 2007, the state district court granted a downward-dispositional sentencing departure. Id.; Respondent's Answer to §2254 Petition ("Resp. Answer"), Ex. 2 (sentencing transcript) [Docket No. 8-2]. The district court ordered that Schultz be committed to the Commissioner of Corrections for the presumptive term of 144 months, but stayed execution of the sentence on the following conditions:

---

[1]  The facts underlying Schultz's crime and his probation violations are not disputed and therefore, the Court will not dwell on those facts at length.

No. 1): That [Schultz] be remanded to the custody of the Martin County sheriff for a period of one year, in additional to any time which he may have previously served.

Secondly, that he will have a sexual offender evaluation through a program such as the CORE program in Mankato; that he will follow specifically and faithfully each and every recommendation for counseling.

That he will have an assessment for any chemical dependency issues and likewise follow those without fail.

That he will continue with whatever counseling may be appropriate with [his counselor] until the counselor determines that it is no longer necessary. And the Court will look at [Schultz]'s progress on his sexual offender treatment before the expiration of one year and will determine at that point in time whether he merits the continued stay of execution or whether he has failed to meet the expectations of the Court and should therefore be committed directly to the Commissioner for the presumptive sentence.

Schultz II, 2010 WL 3220133 at *1 (quoting sentencing transcript, pp. 28-29). The following colloquy then took place on the record between district court Judge Robert Walker and the prosecutor:

Mr. Trushenski: And would the Court also order that Mr. Schultz have no contact with minor females under the age of 18?

The Court: Well, presumptively, so long as he's incarcerated that will be impossible, but when we get to the point of either him returning to a probationary status, we can address those issues.

Id.

After the sentencing hearing, the district court issued a written sentencing order describing the conditions of probation. Schultz II, 2010 WL 3220133 at *1. That order expressly stated that "[Schultz] will have no contact with minor females under the age of 18 years." Id. Later, the court granted Schultz a furlough from the Martin County jail to

2

attend sex offender treatment. Id. The furlough order stated that while on furlough, Schultz was "to report to the treatment group in Mankato and immediately return to the Martin County Jail upon the conclusion of each treatment session." Id. While on furlough, Schultz was to "make no stops while in transit to the treatment program or while returning to the Martin County Jail." Id.

At a review hearing on March 10, 2008,[2] Schultz admitted that he had physical contact with his girlfriend while on furlough to attend sex-offender treatment and that he had contacted an underage female by letter. Resp. Answer, Ex. 4 (hearing transcript, March 10, 2008), pp. 4-5 [Docket No. 8-4]. The court executed Schultz's sentence and Schultz appealed to the Minnesota Court of Appeals. State v. Schultz, No. A08-936, 2009 WL 1586824 (Minn. Ct. App. June 9, 2009) ("Schultz I").

In his first appeal, Schultz argued that the district court abused its discretion in executing his sentence because the court failed to make the necessary findings under State v. Austin, 295 N.W.2d 246, 249-50 (Minn. 1980). Id. at *1. Pursuant to Austin, before a district court may revoke probation, it must "(1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that the need for confinement outweighs the policies favoring probation." 295 N.W.2d at 250. The Court of Appeals agreed, noting "this record truly lacks a reasonable analysis of the final Austin factor—whether the need for communication outweighs the policies favoring probation." Schultz I, 2009 WL 1586824 at *4. The Court of Appeals remanded for further findings, concluding that "the Minnesota

---

[2]     In December, 2007, Schultz asked for early release from jail. Respondent's Answer to §2254 Petition ("Resp. Answer"), Ex. 3 (hearing transcript) [Docket No. 8-3]. The State objected, citing, among other reasons, two violations, including attempt to correspond with a female minor. Id., p. 3.

Supreme Court made it crystal clear in Austin that there is a sound public policy favoring probation, and the need for prison confinement must be shown by the state to outweigh that policy.  At this point, an explanation of that factor is lacking." Id.

On remand, the state district court held a contested hearing on the revocation of Schultz's probation.  Resp. Answer, Ex. 5 (hearing transcript, September 23, 2009).  At that hearing, the state alleged that Schultz violated his probation by: (1) failing to make progress on his behavior; (2) failing to attend psychological counseling; (3) violating the terms of his furlough; (4) attempting to contact a female under the age of 18; and (5) violating the rules of the jail.  Id., pp. 7-12.  Schultz argued that the no-contact-with-minor-females restriction was not a condition of his probation, as it was not specifically ordered by the district court at the sentencing hearing.  Id., pp. 13-14.  Schultz did not dispute that the no-contact-with-minors provision was reflected in the court's written sentencing order or that he signed a probation contract containing the same provision. Id., pp. 7, 13-14.

The state district court found that Schultz had violated three conditions of probation: (1) failing to continue mental-health counseling; (2) having sexual contact with his 19-year-old girlfriend while on furlough from the Martin County Jail to attend sex-offender treatment; and (3) attempting to contact a female under the age of 18 while he was in jail.  Amended Petition, Ex. 4 (district court Findings & Order on September 23, 2009 contested hearing) [Docket No. 4].  The district court further found that Schultz's violations were intentional and inexcusable and that they were indicative of Schultz's continuing threat to public safety if his probation was not revoked.  Id., Findings, ¶15.  Schultz's probation agent testified at the hearing that it would be difficult

to supervise Schultz and he would be a threat to public safety.  Id., Findings, ¶12.  The district court revoked Schultz's stayed prison sentence and committed him to the Commissioner of Corrections.  Id., Order, ¶1.

Schultz appealed the state court's order to the Minnesota Court of Appeals on January 8, 2010.  Amended Petition, p. 3; Schultz II, 2010 WL 3220133.  On appeal, Schultz did not deny that he failed to continue with his mental health treatment, that he had contact with his girlfriend while on furlough to attend mental health treatment, or that he attempted to contact a minor female while in jail.  Schultz II, 2010 WL 3220133 at *3.  Nonetheless, Schultz argued that his attempted contact with a minor female was not a violation of his probation because the district court did not pronounce the no-contact provision orally at the sentencing hearing.  Id.[3]  Schultz argued that "because the [district c]ourt's oral pronouncement controls over the written order . . . the no-contact-with-minor-females provision was not a true condition of [his] probation, and his probation cannot be revoked because he attempted to have such contact."  Id. (alterations and ellipsis in original).  Further, the difference between the written order and the oral statement created confusion that rendered Schultz's actions excusable.  Id. at *4.

The Court of Appeals first described the law that bore on its analysis:

> In probation revocation proceedings, 'the condition alleged to
> have been violated must be a condition of probation that has
> in fact been imposed by the district court.'  State v. Ornelas,
> 675 N.W .2d 74, 75 (Minn. 2004).  When pronouncing a
> sentence, the district court must '[s]tate precisely the terms
> of the sentence.'  Minn. R.Crim. P. 27.03, subd. 4(A).  "[T]he

---

[3]     The Court of Appeals noted that Schultz presented no argument on his other two probation violations.  Schultz II, 2010 WL 3220133 at *3, n. 1.  The court rejected Schultz's statement that the district court had found only one probation violation.  Id.

responsibility for stating the precise terms of a sentence rests squarely with the [district] court.' <u>State v. Staloch</u>, 643 N.W.2d 329, 332 (Minn. App. 2002). '[A]n orally pronounced sentence controls over a judgment and commitment order when the two conflict.' <u>Id.</u> at 331 (quoting <u>United States v. Villano</u>, 816 F.2d 1448, 1450-52 (10th Cir. 1987). But '[w]hen an orally pronounced sentence is ambiguous ... the judgment and commitment order is evidence which may be used to determine the intended sentence.' <u>Id.</u> (quoting <u>Villano</u>, 816 F.2d at 1451). 'This is the purpose of the written order: to clarify an ambiguous oral sentence by providing evidence of what was said from the bench.' <u>Id.</u> (quotation omitted).

<u>Schultz II</u>, 2010 WL 3220133 at *3 (footnote omitted).

Then the appellate court found that the district court's oral statement regarding no-contact-with-minors was ambiguous. <u>Id.</u> at *4. Addressing Schultz's argument that the court had denied the State's request for a no-contact order, the Court of Appeals found that another interpretation of the oral statement was possible—that the court did not approve of Schultz contacting minors, did not intend for Schultz to have such contact and felt that an express order preventing contact was not necessary as it would be "impossible" while Schultz was in jail. <u>Id.</u> at *3.

Next, the Court of Appeals found that the district court's written sentencing order clarified the district court's direction regarding no contact with minors as a condition of probation and, therefore, the first <u>Austin</u> factor was satisfied. <u>Id.</u>, at *4. The appellate court further found that any confusion Schultz contended arose because of the disparity between the district court's oral statements at sentencing and the written sentencing order did not render his violation of the no-contact term excusable. <u>Id.</u> The district court had clearly expressed its disapproval of Schultz having contact with minor females and its written order prohibited it—additionally, the court-ordered sexual-offender evaluation

recommended that Schultz have no contact with minor females. Id. Schultz had admitted in court that his contact with his girlfriend while he was on furlough showed that he would "probably not listen to and abide by court orders." Id. at *4. The Court of Appeals concluded that the district court did not err in finding that Schultz's violation was intentional and inexcusable and thus had made appropriate findings under the second Austin factor. Id.

Regarding the third Austin factor, the Court of Appeals determined that on remand, the district court adequately explained why it concluded confinement was necessary. Id. The Court of Appeals noted:

> [t]he district court found that Schultz's actions 'reveal his lack of respect for the probationary process as well as his continuing inappropriate sexual propensities.' The district court reasoned this 'combination of perils,' as well as the seriousness of the underlying conviction, jeopardized public safety. The district court also cited Schultz's lack of insight, which was demonstrated by his attempt to contact a minor female while in jail facing a prison sentence for having sexually penetrated a minor and his sexual contact with his girlfriend while on a furlough approved solely for travel to and participation in court-ordered sex-offender treatment. The district court acknowledged that the found violations were not 'on par' with the severity of the underlying offense, but nonetheless concluded that Schultz had proven himself unamenable to probation and a continuing threat to public safety. The district court's reasoning is sound and does not constitute an abuse of discretion.

Id.

On October 15, 2010, Schultz filed a petition for further review to the Minnesota Supreme Court. Amended Petition, p. 3.[4] The Minnesota Supreme Court summarily

---

[4] The Amended Petition erroneously stated that the State filed the petition for discretionary review. Amended Petition, p. 3.

denied the petition on December 22, 2010. Amended Petition, Ex. 2 (Minnesota Supreme Court Order) [Docket No. 4].

In November, 2011, Schultz filed a petition for post-conviction relief, in which Schultz argued that the district court, when it revoked his probation, violated his Fifth Amendment Due Process rights, as made applicable to the individual states under the Fourteenth Amendment of the United States Constitution. Amended Petition, Ex. 3 (Petition for Post-Conviction Relief), p. 14 [Docket No. 4]. Schultz contended that the Minnesota Supreme Court "impermissibly allowed the District Court of Martin County to amend an oral sentencing order, and later included a new term of probation after sentencing occurred" in violation of the Fifth Amendment. Id. (citing State v. Staloch, 643 N.W.2d 329 (Minn. Ct. App. 2002)). Schultz further argued that the oral sentencing order was unambiguous and as such, constituted the district court's judgment on Schultz's probation. Id., p. 15 (citing Johnson v. Mabry, 602 F.3d 167 (8th Cir. 1979)). Schultz also maintained that the Minnesota Supreme Court had denied his right to due process "by allowing modification of his sentence without notice," and "its application [compels] an ex post facto application of a new judicial order or modification of a statute that had not hitherto been criminalized by that statute." Id. (citing State v. Ornelas, 675 N.W .2d 74 (Minn. 2004)).

The state district court denied Schultz's petition, concluding that the petition was procedurally barred by State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976).[5] Amended

---

[5]  Pursuant to Knaffla, "once a direct appeal has been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 243 N.W.2d at 741.

Petition, Ex. 5 (Order Opinion of the Minnesota Court of Appeals dated August 2, 2012 summarizing post-conviction petition and denial of petition), p. 25.

Schultz appealed the denial of his petition to the Minnesota Court of Appeals, which affirmed the state district court's order. Id., p. 28. The Court of Appeals noted that an appeal from a probation revocation is not considered a direct appeal and, therefore, does not fall within the Knaffla rule. Id., pp. 25-26 (citing Barnslater v. State, 805 N.W.2d 910, 913 (Minn. Ct. App. 2011)). Nevertheless, the petition was barred by the doctrine of collateral estoppel. Id., pp. 25, 27. The Court of Appeals noted that based on Staloch, Schultz had argued in his probation-revocation appeal that because the no-contact order was not included in the oral sentencing order, it was not a term of his probation and, therefore, he could not have violated this non-term when he attempted to communicate with a minor. Id., p. 26. The appellate court rejected Schultz's reliance on Staloch, noting that in Staloch "this court found that the oral sentencing order was not ambiguous, so the written sentencing order was not needed to determine what the district court said." Id. (citing Staloch, 643 N.W.2d at 331). However, in Schultz II, the court found that the oral pronouncement of the probation conditions was ambiguous, and, therefore, it was appropriate to rely on the written order to clarify the ambiguous oral statements. Id., p. 27.

As for Schultz's due process argument—i.e."that the district court abused his due-process rights when it found that appellant 'had violated a term of probation that was not specifically pronounced at appellant's hearing,'" the Court of Appeals found that this argument was "exactly the same argument" he made previously and he was, therefore, estopped from re-litigating the issue. Id. The appellate court affirmed the

9

district court's order denying Schultz's petition.  Id.  Schultz sought review of this decision to the Minnesota Supreme Court, which was summarily denied on October 24, 2012.  Id., p. 34.  This habeas petition followed.

## II.    RELEVANT LAW BEARING ON HABEAS PETITIONS

### A.    Habeas Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254(d) provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Here, while Schultz does not state whether he is proceeding under 28 U.S.C. § 2254(d)(1) or (2), the substance of his Amended Petition indicates that he is raising challenges under both § 2254(d)(1) and (2).

The Eighth Circuit described review under § 2254(d)(1) as follows:

> A decision is "contrary to" federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or if it 'confront[ed]

facts that are materially indistinguishable from a relevant Supreme Court precedent' but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court 'unreasonably applies' federal law when it 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,' or 'unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.' Id. at 407.

A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.' Id. at 411.

Engesser v. Dooley, 457 F.3d 731, 735-36 (8th Cir. 2006), cert. denied 549 U.S. 1223 (2007). Under this standard, federal courts "must deny a writ—even if [they] disagree with the state court's decision—so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

However, where the state court did not explicitly analyze or adjudicate a petitioner's claims under federal law on appeal, although the federal nature of the claims was fairly presented to the state court, the less deferential standard of review for habeas corpus cases before AEDPA should be applied. See Middleton v. Roper, 455 F.3d 838, 856 (8th Cir. 2006), cert. denied, 549 U.S. 1134 (2007) (where state court did not adjudicate constitutional claim on the merits, court reviewed district court's factual findings for clear error and conclusions of law de novo); Taylor v. Bowersox, 329 F.3d 963, 967-68 (8th Cir. 2003), cert. denied, 541 U.S. 947 (2004) ("Under the … AEDPA, we apply a deferential standard of review to state court resolutions of law and

fact only if the state court adjudicated the prisoner's claim on its merits. 28 U.S.C. § 2254(d); Kenley v. Bowersox, 275 F.3d 709, 711 (8th Cir. 2002), cert. denied, 537 U.S. 919 (2002) and reh'g denied, 537 U.S. 1069 (2002); Kittrell v. Von Wald, Civ. No. 05-2796 (DSD/FLN), 2007 WL 1114816, at *5 (D. Minn. April 13, 2007) ("where the state courts never discussed Petitioner's current constitutional claims in any detail," the court reviewed petitioner's claims under the pre-AEDPA standard of review, "i.e. without giving any special deference to the underlying state court decisions"); see also Bertram v. Bertsch, Civ. No. 1:08-093, 2009 WL 1688183, at * 11 (D. N.D. June 16, 2009) ("If AEDPA deference is not appropriate, then the pre-AEDPA standard of de novo review applies to questions of law and mixed questions of law and fact." (citing Brown v. Allen, 344 U.S. 443 (1953); Williams, 529 U.S. at 400-402 (O'Connor, J., concurring opinion); Canaan v. McBride, 395 F.3d 376, 383 (7th Cir. 2005); Clemons v. Luebbers, 381 F.3d 744, 756 n.8 (8th Cir. 2004); Taylor, 329 F.3d at 967-68; Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)); Appel v. Horn, 250 F.3d 203, 211-12 (3rd Cir. 2001)). "Under . . . [the pre-AEDPA] standards, we review the District Court's conclusions of law de novo, and give the state court's factual findings a 'presumption of correctness.'" Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002) (quoting Jones v. Delo, 258 F.3d 893, 901 (8th Cir. 2001) (citations omitted)), cert. denied, 537 U.S. 909 (2002).

By its terms, § 2254(d)(1) "limits the benchmark precedent against which a habeas court may measure a state court decision to 'clearly established federal law, as determined by the Supreme Court of the United States.'" O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir. 1999), overruled on other grounds. Thus, even if lower federal court

decisions support a petitioner's position, "the writ cannot issue unless the state court decision contravenes, or involves an unreasonable application of, extant Supreme Court jurisprudence." Id. Nevertheless, "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 872 (8th Cir. 1999) (citing O'Brien, 145 F.3d at 25) ("If no Supreme Court precedent is dispositive of a Petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.' In such circumstances, a federal habeas court then determines whether the state court decision reflects an unreasonable application of clearly established Supreme Court jurisprudence. This reduces to a question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable. To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue."); see also Engesser, 457 F.3d at 736-37 ("To the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue.") (citation and marks omitted).

Under §2254(d)(2), a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings," only if it is shown that the state court's presumptively correct factual findings are not supported by the record. 28 U.S.C. § 2254(e)(1). Pursuant to § 2254(e)(1):

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the

> judgment of a State court, a determination of a factual issue
> made by a State court shall be presumed to be correct.  The
> applicant shall have the burden of rebutting the presumption
> of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); see also Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

With these standards in mind, this Court now turns to Schultz's request for relief. The Court reviews the state court's decision under the pre-AEDPA de novo standard of review because none of the state courts discussed Schultz's constitutional claims on the merits.

## III.  DISCUSSION

Schultz claimed that he was denied his Fifth Amendment right to due process, made applicable to the states by the Fourteenth Amendment.[6]  Schultz argued that the Minnesota Supreme Court "allowed the District Court of Martin County to amend an oral sentencing order, and later include a new term of probation after sentencing occurred." Amended Petition, p. 4.  Schultz contended that the oral pronouncement was clear, unambiguous and constituted the district court's judgment.  Id.  (citing Johnson v. Mabry, 602 F.2d 167, 170 (8th Cir. 1979)).  According to Schultz, he was denied due process when the Minnesota Supreme Court allowed the modification of his sentence without notice.  Id. (citing State v. Ornelas, 675 N.W.2d 74 (Minn. 2004)).

---

[6]     The Court notes that it is the Due Process Clause of the Fourteenth Amendment that is applicable to the States, not the Due Process Clause of the Fifth Amendment. The Due Process Clause of the Fifth Amendment protects against due process violations by the federal government.  United States v. Balsys, 524 U.S. 666, 700 (1998) (Stevens, J., concurring) ("Th[e] [Fifth Amendment] constrains the power of the Federal Government to deprive any person 'of life, liberty, or property, without due process of law,' just as the Fourteenth Amendment imposes comparable constraints on the power of the States.").  However, it was clear that Schultz was alleging a violation of the Due Process Clause of the Fourteenth Amendment.

Additionally, Schultz asserted that the Minnesota Supreme Court had denied his right to due process by its ex post facto application of a new judicial order or modification of a statute that had not hitherto been criminalized by that statute.  Id. (citing State v. Ornelas, 675 N.W .2d 74 (Minn. 2004); Bouie v. City of Columbia, 378 U.S. 347, 352 (1964); Rogers v. Tennessee, 532 U.S. 451, 459 (2001); Hill v. Hopkins, 245 F.3d 1038, 1039 (8th Cir. 2001)).

The State argued that Schultz's right to due process was not violated as the oral pronouncement of the terms of Schultz's probation was ambiguous and the written sentencing order was necessary to clarify that ambiguity.  Memorandum of Law in Support of Answer to §2254 Petition ("Resp. Mem."), p. 6 [Docket No. 7].  The State rejected Schultz's reliance on Johnson, noting that in Johnson, the Eighth Circuit upheld the denial of a petition for a writ of habeas corpus, finding that the commitment order at issue contained an error and it was permissible for the court to correct the error.  The State also distinguished Ornelas, in which the defendant was found to have violated a term of his probation that was never actually imposed.  Id. at 7.  In this case, the court explicitly ordered that Schultz was to have no contact with minor females.  Id.

The State further claimed that the Minnesota Court of Appeals' decision that the oral pronouncement was ambiguous and therefore, the written sentencing order was required and appropriate to clarify the ambiguity, was amply supported by the record. Id., p. 8.  Where Schultz did not present clear and convincing evidence to rebut the state court's determinations the issuance of a writ of habeas corpus should be denied. Id.

This Court concludes that the Amended Petition must be denied. First, there was no evidence of a due process violation. "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Supreme Court has found liberty interests arising from the due process clause for a petitioner's objection to the revocation of probation. See Gagnon v. Scarpelli, 411 U.S. 778 (1973). "A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional freedom such that 'the loss of liberty entailed [by its revocation] is a serious deprivation requiring that the [prisoner] be accorded due process'" Whitehorn v. Harrelson, 758 F.2d 1416, 1420 (11th Cir. 1985) (footnote omitted) (quoting Gagnon, 411 U.S. at 781).

Due process requires, among other things, notice or fair warning of what conduct might result in revocation. United States v. Gallo, 20 F.3d 7, 11 (1st Cir. 1994); see also United States v. Twitty, 44 F.3d 410, 412 (6th Cir. 1995) ("Indeed, since revocation of probation may result in loss of liberty, the Fifth Amendment requires that a defendant be accorded due process) (citing Gagnon, 411 U.S. at 781-82); United States v. Dodson, 25 F.3d 385, 388 (6th Cir.1994) ("due process requires that the probationer be afforded a hearing before the final decision on revocation occurs"); United States v. Tham, 884 F.2d 1262, 1265 (9th Cir. 1989) (probationer must have sufficient notice of alleged violations of conditions to satisfy procedural due process); United States v. Grant, 816 F.2d 440, 442 (9th Cir. 1987) ("It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty.") (citation omitted); United States v. Simmons, 812 F.2d 561, 565 (9th Cir. 1987) ("An

essential component of these due process rights is that individuals be given fair warning of acts which may lead to revocation.") (citation omitted); United States v. Dane, 570 F.2d 840, 843 (9th Cir. 1977) (same).  Where the warning is not contained in a formal condition, "the record must be closely scrutinized to determine whether defendant did, in fact, receive the requisite warning."  Dane, 570 F.2d at 844.

Schultz relied on Bouie v. City of Columbia, 378 U.S. 347, 352 (1964); Rogers v. Tennessee, 532 U.S. 451, 459 (2001); and Hill v. Hopkins, 245 F.3d 1038, 1039 (8th Cir. 2001) to argue that his due process rights were violated by the modification of his sentence without notice and that "its application was an ex post fact [sic] application of a new judicial order or modification of a statute that had not hitherto been criminalized by that statute."  Amended Petition, p. 4.  By this, the Court assumed that Schultz meant that the Minnesota Supreme Court criminalized behavior by Schultz that was not previously considered criminal.

The cases relied upon by Schultz addressed the ex post facto application of statutes or judicial interpretations of statutes in a way that criminalized behavior that was not previously criminal.  Hill v. Hopkins involved a decision by the Nebraska Supreme Court[7] in which that the defendant contended that his due process rights were violated when the court re-interpreted the law regulating his sentence in the interval between the commission of his crime and his second conviction following retrial.  245

---

[7]     Schultz erroneously stated that the Eight Circuit in Hill found that the Minnesota Supreme Court impermissibly expanded the scope of criminal conduct encompassed by a statue and erroneously applied it to the defendant.  Amended Petition, p. 5.  Hill involved a decision by the Nebraska, not Minnesota Supreme Court.  In addition, the holding of Hill is as follows:  "We hold, therefore, that the Nebraska Supreme Court did not violate Mr. Hill's right to due process, because it did not retroactively apply a re-interpretation of the relevant statute to Mr. Hill's case after he committed his crime."  245 F.3d at 1040.

F.3d at 1039. The Eighth Circuit found no due process violation because it concluded that the Nebraska Supreme Court did not retroactively apply a re-interpretation of the Nebraska statute governing credit for time served. Id., p. 1040.

In Bouie, the defendants claimed that the South Carolina Supreme Court construed the statute under which they had been convicted in such a way as to criminalize conduct that was not criminal at the time their alleged crime was committed—the Supreme Court agreed and reversed the convictions. 347 U.S. at 362.

In Rodgers, a criminal defendant appealed his conviction for murder based on the fact that the victim had died more than a year after the defendant stabbed him. 532 U.S. at 451. At the time, Tennessee had a common-law "year and a day" rule under which a defendant could not be convicted of murder if the victim died more than a year and a day after the act. Id. In affirming defendant's conviction, the Tennessee Supreme Court abrogated the common law rule. The Supreme Court affirmed, concluding that abrogation of the rule was neither unexpected nor indefensible—in other words, the decision did not violate due process because it was foreseeable and, as a result, the defendant had fair warning that he could be convicted of murder. Id. at 452.

To the extent that Schultz was invoking the ex post facto clause of the Sixth Amendment, the clause has no application as it relates only to acts of a legislature. Id. ("the Ex Post Facto Clause's clear text. . .expressly applies only to legislatures. . . ."). Although the defendants in Hill, Bouie and Rodgers also invoked the ex post facto clause, the courts analyzed defendants' claims under the foundational principle of due process—fair warning. The Supreme Court in Rodgers observed that the "[Bouie] decision was rooted firmly in well established notions of due process. Its rationale

rested on core due process concepts of notice, foreseeability, and in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." Id. (emphasis in original) (citing Bouie, 378 U.S. at 351, 352, 354-355). See also Hill, 245 F.3d at 1039 ("Since Mr. Hill challenges an asserted judicial modification of the law rather than a legislative change, this case, as a technical matter, raises questions under the due process clause of the fourteenth amendment rather than the ex post facto clause of the sixth amendment. As a practical matter, however, this distinction makes little difference: In both instances the principle appealed to is a constitutional guarantee of fair warning that future conduct can give rise to a particular criminal sanction."). As a result, the focus of this Court's analysis under federal constitutional law must be whether Schultz had fair warning that his contact with an underage female could result in the revocation of his probation. The Court concludes that there is absolutely no question on this point.

Schultz did not dispute that he received the written sentencing order and reviewed the terms with his probation agent. Resp. Answer, Ex. 5 (transcript of September 23, 2009 hearing), p. 7; Amended Petition, Ex. 3 (Petition for Post-Conviction Relief). Nor is there any evidence that after reviewing the sentencing order that he sought clarification of any of its terms, otherwise expressed confusion over its terms, or objected that the order contained a term not pronounced in the oral sentence. To the contrary, at the review hearing at which the state argued for revocation of Schultz's probation, his attorney stated:

> Another violation alleged is the contact through the letters with an underage female. My understanding is that that [sic] female first contacted the jail and asked if she could write to Mr. Schultz. They told her she could, and of course when he

> received a letter, he felt it was appropriate to respond in
> kind.

Resp. Answer, Ex. 4, p. 4 [Docket No. 8-4]. Schultz's attorney did not suggest that Schultz was confused in any way regarding the no-contact order, nor did he argue that the term was not a term of Schultz's probation.

All of the evidence in the record indicates that Schultz had fair notice of the terms and conditions of his probation, including the requirement that he have no contact with underage females. In light of this evidence, there was no due process violation when Schultz's probation was revoked for violating the no-contact-with-minor-females provision of the probation order. Thus, this Court finds that the decision by the Minnesota Court of Appeals was neither contrary to, nor involved an unreasonable application of clearly established Federal law pursuant to 28 U.S.C. §2254(d)(1).

Second, the Minnesota Court of Appeals' decisions (Schultz II, Order Opinion affirming denial of post-conviction relief) were supported by factual evidence from the record and Schultz has offered nothing to rebut that evidence, much less how the appellate court erred in its view of the factual record. In Schultz II, the Court of Appeals quoted the original sentencing transcript and found first that the oral pronouncement was not in conflict with the written order because the Court's oral pronouncement could be construed to mean that Schultz should have no contact with minor females. Schultz II, 2010 WL 3220133 at *3-4. Further, the court properly determined that because the oral pronouncement was ambiguous, the State had the right to rely on the written sentencing order for clarification of the oral statement. Id. at *4. Schultz's statement that the oral probation statement was "clear and unambiguous"—i.e. he was not prohibited from contacting minor females – is without any factual support, and ignores

the fact that he signed a probation contact with his probation agent in which he acknowledged that the could not have contact with minor females (Resp. Mem., Ex. 5, p. 7). Nothing in the record supports this Schultz's theory.

Under Minnesota law, an orally pronounced sentence controls over a judgment and commitment order when the two conflict. <u>Staloch</u>, 643 N.W.2d at 332 (citing <u>United States v. Villano</u>, 816 F.2d 1448, 1450-52 (10th Cir. 1987)). An oral sentence is ambiguous when it is subject to two reasonable interpretations. <u>Pageau v. State</u>, 820 N.W.2d 271, 277 (Minn. Ct. App. 2012) (citing <u>State v. Leathers</u>, 799 N.W.2d 606, 608 (Minn. 2011)). When an orally pronounced sentence is ambiguous, "the judgment and commitment order is evidence which may be used to determine the intended sentence." <u>Id.</u> This practice is "sound and consistent with Minnesota sentencing practice." <u>Pageau</u>, 820 N.W.2d at 277.

The question for this Court is whether Schultz has presented clear and convincing evidence that the appellate court's conclusion that the oral sentence was ambiguous was erroneous. Schultz has presented no evidence, much less clear and convincing evidence. Having failed to establish that the state court's decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings, Schultz's habeas petition must be denied under 28 U.S.C. §2254(d)(2).

For all of these reasons, this Court recommends that Schultz's Amended Petition be denied and this matter dismissed with prejudice.

## IV.    CERTIFICATE OF APPEALABILITY

A §2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel about this case that warrants appellate review. It is therefore recommended that Petitioner should not be granted a COA in this matter.

## V.     RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1.      Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, (Docket No. 3), be **DENIED**.

2.      This matter be dismissed with prejudice.

3.      Petitioner should **NOT** be granted a Certificate of Appealability.


Dated: November 18, 2013                    *Janie S. Mayeron*
                                            JANIE S. MAYERON
                                            United States Magistrate Judge

NOTICE

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **DECEMBER 2, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.